**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **NIESHIA DUGANNE,** | : | |
| **Plaintiff** | : | |
| | : | **CIVIL ACTION NO. 3:13-1359** |
| **v.** | : | |
| | | **(JUDGE MANNION)** |
| **SUPT. GIROUX, <u>et</u> <u>al.</u>,** | : | |
| **Defendants** | : | |

**<u>MEMORANDUM</u>[1]**

## I. <u>Background</u>

Plaintiff, an inmate confined in the State Correctional Institution Muncy ("SCI-Muncy"), Pennsylvania, filed this civil rights action pursuant to 42 U.S.C. §1983. The action proceeds via an amended complaint filed by Plaintiff on February 7, 2014. (Doc. 34). Plaintiff names as Defendants the Corizon Medical Department, and its employee Dr. Famiglio, and the following Department of Corrections ("DOC") employees: Superintendent Giroux, Deputy Superintendent Wendy Nicholas, Fire and Safety Director Frank Welsh, Correctional Officers Moore, and Boyles, and Physicians Assistant Clemens and Maintenance Supervisor Harding. Id.

Duganne alleges that Defendants have been deliberately indifferent to

---

[1] For the convenience of the reader of this document in electronic format, hyperlinks to the court's record and to authority cited have been inserted. No endorsement of any provider of electronic resources is intended by the court's practice of using hyperlinks.

her injuries sustained when she fell from "an inappropriately welded bed frame." Id. In particular, Plaintiff claims that Defendants refuse to provide her with proper medical treatment, and recommended testing. Id. For relief, she seeks compensatory and punitive damages, as well as injunctive relief. Id.

Presently before the Court are Defendants' motions to dismiss Plaintiff's amended complaint. (Docs. 35, 37). The motions have been fully briefed and are ripe for disposition. For the reasons that follow, Defendants' motions to dismiss will be granted.


II. **Motion to Dismiss**

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp.

v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. §1997e apply, as do the screening

provisions of 28 U.S.C. §1915(e), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such ground pursuant to the screening provisions of the PLRA. See Lopez; Dare v. U.S., Civil No. 06-115E, 2007 WL 1811198, at *4 (W.D. Pa. June 21, 2007), aff'd, 264 Fed App'x. 183 (3d Cir. 2008).


### III.    **Allegations in Amended Complaint and Supporting Exhibits**

On January 2, 2012, Plaintiff states that her 'bunk collapsed from an inappropriately welded bed frame while Plaintiff was on the top bunk causing Plaintiff to suffer permanent injuries in which CO Moore and CO Boyle were made aware of and nothing was done to correct the problem with the bunk." (Doc. 34 at 2, amended complaint). Plaintiff claims that she was "then helped up by a nurse and officers and transported to the infirmary. Id. Once at the infirmary, she was "only asked what hurt...no vitals, exam, or physical check

was ever done on the Plaintiff." Id. Plaintiff was then placed in another cell in the infirmary with a broken bed and intercom." Id. Plaintiff states that "she tried to call for help through the intercom but no answer" and "she had to wait standing in pain for almost an hour for pain meds", which consisted of "one Motrin." Id. Finally, Plaintiff states that she "did not see a doctor till the next day on 1/3/12." Id.

Plaintiff states that she was "informed by C.O. Mills and C.O. Wright that C.O. Moore never submitted a work order the night the incident occurred so until the bunk was fixed she had to return to the same cell with the broken bunk".[5] Id. Plaintiff claims that she was informed by the inmates who occupied the cell prior to her that "they lived in the room with the broken bed before Plaintiff and that they had reported it to C.O. Moore and C.O. Boyles yet no work order had ever been put in to fix the bed." Id.

On January 4, 2012, Plaintiff filed Grievance No. 396242, complaining about the January 2, 2012, incident, and Plaintiff's dissatisfaction with the

---

[5]Contrary to Plaintiff's statement that she returned to a broken bed is a copy of Plaintiff's Inmate Request to Staff Member, submitted as one of the exhibits in support of her complaint, which reveals that Officer Bogenrief "was made aware of the problem on 1/3/12 @ 0700 hrs" and he "made a work order out at that time" and "the work order was issued to Mr. Meyer and the bed was replaced by 0930 the same day." (Doc. 31 at 22, Inmate's Request to Staff Member).

medical care she received. ((Doc. 31 at 2, Inmate Grievance).

By response dated January 30, 2012, Grievance No. 396242 was

denied, based on the following:

> I am in receipt of your grievance and have the following response to your claims regarding medical care.
>
> Upon entrance to the medical department, you told the nurse you fell on your "cellie" when the bed collapsed. The nurse's assessment stated you had pain from the mid left thigh to the lower back. In addition, you twisted your ankle. The doctor was called, you were admitted for a 23 hour observation, and Motrin was ordered for pain. The third shift nurse documents you slept through the night and asked for Motrin at 0645, therefore you were not seen because she did not want to wake you.
>
> On 1/3/12, when the doctors were conducting rounds, Dr. Gothwal documents your exam as negative, no bruising or discoloration from left flank area to your mid left thigh. No serious injuries observed. You were then discharged and walked to C unit without complication as you were observed by staff.
>
> 1/4/12, you came to sick call complaining of neck pain down to you tailbone. This was a new complaint. You were able to move all extremities well and the PA thought you might have muscle spasms. The PA ordered you Robaxin which works really well for muscular skeletal pain if you take it as prescribed.
>
> 1/6/12, you presented to sick call again with the same neck and tailbone complaint. The PA added Naprosyn and ordered X-rays.
>
> 1/9/12, you presented to sick call again now with burning pain in your neck and back. Exam negative, no spasm appreciated, and questionable soft tissue injury. Steroids started and will review X-ray.

1/10/12, seen by Dr. Famiglio with exaggerated symptoms and limping into exam room. A thorough exam with negative findings was documented. You became demanding, asking for an MRI. The story changed of how you fell and you told Dr. Famiglio you fell and hit your head on the toilet, which was a new statement from 1/2/12 when the incident occurred. Additionally, on 1/3/12, the officers conducted a point-to-point watch of you and your cellie and you were both observed walking to your unit without complication. When you present to medical you limp. How would one complete an accurate assessment of a claimed injury with such conflicting information. At this visit, Dr. Famiglio explained to you your C-Spine X-ray was negative of all findings to include soft tissue injury. Dr. Famiglio ordered you a bottom bunk and a follow up visit.

1/12/12, you presented to sick call with acute pain. The PA explained to you that it may take several weeks to get rid of the aches and no further treatment was necessary. In addition, he explained there are no findings upon examine that would require ordered additional imaging.

1/17/12, you presented to sick call again with tight muscles between your shoulder blades. You requested a second pillow. Again, negative exam, no mobility impairment, no muscle spasms palpated, and no bruising. You admitted to the PA you were not taking your medications as prescribed. He explained you need to take them. They may not take away all your pain but will certainly help.

1/18/12, you came to sick call again now claiming your left arm went numb. The PA documents no apparent distress, smiling and talking in sick call waiting area without grimacing or guarding in pain. When leaving the medical nurse observed you walking out lighting a cigarette with both hands while bending your head forward without complications. These actions are inconsistent with your complaints. At this point, the PA feels your symptoms are exaggerated and the severity of your complaints are possibly fabricated.

7

1/23/12, seen by Dr. Famiglio. You entered room limping, dragging your left foot, and complaining of low back pain. He explained your X-rays are normal and neurological exam negative. You became very angry and refused any further treatment offered.

Ms. Duganne, I believe your medical care was thorough and appropriate. There are many inconsistencies in your complaints when you present to medical. The exams performed were negative and the observations of your abilities to walk and function outside of medical are normal. If you choose to litigate, that will be at your expense. At this time, I find your grievance to be lacking in arguable facts and there for it is denied.

(Doc. 31 at 9-11, Initial Review Response). Plaintiff appealed this decision to Final Appeal, with both the Facility Manager[6] and Chief Grievance Officer finding no evidence of neglect or deliberate indifference by SCI-Muncy medical staff. (See Doc. 31 at 12, 13, Facility Manager's Appeal Response; Secretary's Office of Inmate Grievance & Appeals).

On January 31, 2012, Plaintiff alleges that she was seen again by PA Day and was "told she has significant tissue injury and it would take a while

---

[6]In addition to upholding the Grievance Coordinator's findings with respect to Duganne's medical treatment, the Facility Manager also found the following: Upon presentation of hearsay from another inmate, my assistant spoke with CO Moore regarding having knowledge that the leg was bent. CO Moore is a consummate professional and upon questioning vehemently denies having knowledge of the bent leg as you suggest. Furthermore, a review of the Security Cell Inspection Sheets for your cell revealed no such indication of a bent leg. (Doc. 31 at 12, Facility Manager's Appeal Response).

to heal." (Doc. 34 at 7). She then asked Plaintiff "what meds Plaintiff was on" and "when told, she stated you can't be on mobic and naperson (sic) at the same time, that can cause G.I. bleeding." Id.

On February 6, 2012, Plaintiff was "put on muscle relaxers for 5 days due to severe pain still as well as headaches which PA Day said was a result of her injury." Id.

On March 6, 2012, Plaintiff states that she was "seen by PA Clemens again who referred Plaintiff to Dr. Famiglio and refused to see Plaintiff again." Id.

On March 21, 2012, on the recommendation of Dr. Famiglio, Plaintiff was sent to Geisinger Hospital for an MRI on her neck. Id.

On April 25, 2012, Plaintiff was examined by a neurosurgeon, who opined that Plaintiff's problem is "possibly torn ligaments and tendons", and recommended x-rays and a lower back MRI. Id. Plaintiff states that "Corizon would have the final say as to if the MRI would be granted or denied and in the end the MRI was denied." Id.

On May 17, 2013, Plaintiff filed the instant action in which she claims, inter alia, that Dr. Famiglio and Corizon violated her Eighth Amendment rights "for not following the recommendation prescribed by the specialist at

Geisinger for the Plaintiff to receive a lower back MRI." Id. For relief, Plaintiff

seeks compensatory and punitive damages, as well as injunctive relief. Id.

Specifically, Plaintiff seeks "a declaratory judgment stating that: CO Moore

and CO Boyle did violate the Plaintiff's right under the Eighth Amendment and

constituted the unnecessary and wanton infliction of pain by failing to use

reasonable care to avoid a foreseeable risk", that CO Moore and CO Boyle

exposed Plaintiff to serious harm placing her in an unsafe living condition

knowing the bunk was a hazard and making no effort to fix it, thus being

deliberate indifference", and that "Mr. Welsh and Mr. Harding did violate the

Plaintiff's right under the Eighth Amendment causing the unnecessary and

wanton infliction of pay by failing to exercise reasonable care in safety and

maintenance of the bunk which was spot welded, breaking and causing

Plaintiff to sustain permanent injuries."  Id.


IV.   **Discussion**

   A.   **Eighth Amendment Medical Claim**

   In order to establish an Eighth Amendment medical claim, a plaintiff must

show "(i) a serious medical need, and (ii) acts or omissions by prison officials

that indicate deliberate indifference to that need." Natale v. Camden Cty.

Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003). See also Rouse v.

Plantier, 182 F.3d 192, 197 (3d Cir. 1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if unnecessary and wanton infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." Id.

A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837 (1994). Thus, a complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment..." Estelle v. Gamble, 429 U.S. 97, 106 (1976). For instance, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." Id., 429 U.S. at 107. "[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional

rights." Brown v. Borough of Chambersburg, 903 F.2d 274, 278 (3d Cir. 1990). Further, a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment. See White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990). In sum, negligence, unsuccessful medical treatment, or medical malpractice does not give rise to a §1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. See Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993).

Further, a non-physician defendant cannot be found deliberately indifferent under the Eighth Amendment because he or she fails to respond to the medical complaints of an inmate being treated by a prison physician, or because, as non-physicians, they defer to the medical judgment of the inmate's treating physicians. Id., 991 F.2d at 69. If, however, non-medical prison personnel had "a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner," liability may be imposed. Spruill, 372 F.3d 236.

A mere difference of opinion between the prison's medical staff and the inmate regarding the diagnosis or treatment which the inmate receives does not support a claim of cruel and unusual punishment. Farmer v. Carlson, 685 F. Supp. 1335, 1339 (M.D. Pa. 1988).  See McCracken v. Jones, 562 F.2d 22, 24 (10th Cir. 1977); Smart v. Villar, 547 F.2d 112, 113 (10th Cir. 1976).

Additionally, if there is a dispute over the adequacy of the received treatment, courts have consistently been reluctant to second guess the medical judgment of the attending physician. Little v. Lycoming County, 912 F. Supp. 809, 815 (M.D. Pa.), aff'd, 101 F.3d 691 (3d Cir. 1996). The key question is whether the defendant has provided the plaintiff with some type of treatment, regardless of whether it is what the plaintiff desires. Farmer v. Carlson, 685 F. Supp. at 1339.

The allegations in Plaintiff's complaint clearly demonstrate that Plaintiff received medical attention, and that the attention Plaintiff received lacks the requisite deliberate indifference to support a Section 1983 claim. Plaintiff was immediately seen after the January 2, 2012 incident, was placed on 23 hour observation and was provided with medication. From the date of the incident, until the filing of the instant action on May 17, 2013, Plaintiff's complaint reflects that she was seen by medical staff approximately fifteen (15) times. Throughout those visits, Plaintiff was provided with medication, a cane, diagnostic testing, and referrals to outside facilities and providers. At best, Plaintiff's complaint demonstrates her disagreement with medical personnel. Though she may have wished to be transferred to an outside provider for a lower back MRI, her disagreement with the course of action that Defendants took based on the symptoms she presented, is not enough to state a §1983 claim. Sample v.

Diecks, 885 F.2d 1099, 1109 (3d Cir. 1989) (citing Estelle, 429 U.S. at 105–06 (in the medical context, an inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind)).[7] This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff. Farmer; Rouse. Thus, the allegations in the Plaintiff's complaint amount to Plaintiff's subjective disagreement with the treatment decisions and medical judgment of the medical staff at the prison. At most, the allegations in the complaint only rise to the level of mere negligence. As simple negligence can not serve as a predicate to liability under §1983, Hudson v. Palmer, 468 U.S. 517 (1984), Plaintiff's civil rights complaint fails to articulate an arguable constitutional claim. See White, 897 F.2d at 108-110.

Moreover, Plaintiff's denial of appropriate medical care claim against non-medical Defendants, Superintendent Giroux, Deputy Superintendent

---

[7]Even holding Plaintiff's complaint to the less stringent pleading standards of *pro se* plaintiffs, the allegations do not sufficiently allege deliberate indifference. Duganne does not suggest that the Defendants were aware that there was an excessive risk to her health or safety but wantonly refused to provide him medical care. Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004) (stating that while a pro se complaint should be read liberally, an inmate plaintiff must still allege that defendant was aware of the risk and intentionally disregarded it).

Wendy Nicholas, Frank Welsh, Officers Moore, and Boyles, and Maintenance Supervisor Harding is to be dismissed, as these Defendants cannot be found deliberately indifferent to Plaintiff's medical needs when Plaintiff was admittedly under the continual care of the prison medical staff. Durmer, 991 F.2d at 69. See also Thomas v. Zinkel, 155 F.Supp.2d 408, 413 (E.D.Pa.2001) (Prison officials "who are not physicians cannot be considered deliberately indifferent simply because they failed to respond directly to the medical complaints of a prisoner who was already being treated by the prison doctor." (Citing Durmer, 991 F.2d at 69 n. 14)); Newton v. Reitz, 2009 WL 233911(M.D.Pa. Jan. 30, 2009). ("the United States Court of Appeals for the Third Circuit held in Durmer that a non-physician Defendant cannot be held liable for being deliberately indifferent to an inmate's medical needs where, as here, the inmate is receiving treatment from the institution's health care staff.") (Citing Durmer, 991 F.2d at 69).

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. See Grayson v. Mayview State Hospital, 293 F.3d 103, 114 (3rd Cir.2002). Since it is clear from Plaintiff's complaint, that Plaintiff received repeated medical treatment, and merely disagrees with the treatment she received during this time, the Court finds that

15

amendment on these claims would be futile.

## B.   HIPAA[9] VIOLATION

Plaintiff states that Dr. Famiglio "called Plaintiff's Officer inquiring how she was getting around" and then "began telling Officer Wright her personal medical information concerning the test results of her x-rays and hadn't even told the Plaintiff yet", as well as "told the officer that the Plaintiff was requesting an MRI or CAT scan." (Doc. 34 at 6). Thus, Plaintiff concludes that Dr. Famiglio "did violate the Plaintiff's HIPPA Rights as well as by releasing her private medical information several times to several different people without the Plaintiff's permission." (Doc. 34 at 9).

Neither the U.S. Supreme Court nor the United States Court of Appeals for the Third Circuit has specifically addressed the issue, however, other district courts, including the Middle District, have all found that HIPAA does not create a private right of action. Ball v. Famiglio, 2012 WL 1886676 (M.D.Pa. March 14, 2012). See Dominic J. v. Wyoming Valley West High School, 362 F.Supp.2d 560 (M.D.Pa.2005); Rigaud v. Garofalo, 2005 WL 1030196 (E.D.Pa.2005); O'Donnell v. Blue Cross Blue Shield of Wyoming, 173 F.Supp.2d 1176 (D.C.Wyo.2001); Brock v. Provident Am. Ins. Co., 144

---

[9]Health Insurance Portability and Accountability Act ("HIPAA"), 42 U.S.C. §1320d–2.

F.Supp.2d 652 (N.D.Tex.2001); and Means v. Indep. Life and Accident Insurance Co., 963 F.Supp. 1131 (M.D.Ala.1997). Thus, Duganne simply may not maintain a private HIPAA claim against Defendant Famiglio arising out of the disclosure of her private medical information.

### C.    Claims against Defendants Superintendent Giroux, and Deputy Superintendent Wendy Nicholas.

Plaintiff fails to state a claim against Defendants Giroux and Nicholas because the complaint reveals that they lack any personal involvement in the wrongs, and Plaintiff's allegations against these Defendants are based solely upon their supervisory roles.

Local government units and supervisors typically are not liable under §1983 solely on a theory of respondeat superior. See City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 n. 8 (1985); Monell v. Dep't of Soc. Servs. Of City of New York, 436 U.S. 658, 690-91 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988). See also Sutton v.

Rasheed, 323 F.3d 236, 249 (3d Cir. 2003)(citing Rode). Personal

involvement can be shown through allegations of personal direction or of

actual knowledge and acquiescence." Rode, 845 F.2d at 1207. Accord

Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir.1997); Baker

v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir.1995). As explained in Rode:

> A defendant in a civil rights action must have personal
> involvement in the alleged wrongs. . . . [P]ersonal
> involvement can be shown through allegations of
> personal direction or of actual knowledge and
> acquiescence. Allegations of participation or actual
> knowledge and acquiescence, however, must be
> made with appropriate particularity.

Rode, 845 F.2d at 1207.

A §1983 action brought against a person in his or her official capacity

"generally represent[s] only another way of pleading an action against an

entity of which an officer is an agent." Monell, 436 U.S. at 690 n. 55. "[I]n an

official-capacity action, ... a governmental entity is liable under §1983 only

when the entity itself is a 'moving force' behind the deprivation; thus, in an

official capacity suit the entity's 'policy or custom' must have played a part in

the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985)

(internal quotation marks and citations omitted).

With respect to Defendants Giroux and Nicholas, a review of the

Complaint confirms that other then being listed as Defendants there are no specific assertions that any of these Defendants had any personal involvement in the purported violations of Plaintiff's rights under the Eighth Amendment. In fact Plaintiff states that Defendant Nicholas "did violate the Plaintiff's right under the Eighth Amendment as she was the official overseer of the medical department and had full knowledge of the inadequate medical care the Plaintiff was receiving." (Doc. 31 at 4). Based upon an application of the above standards, such allegations are insufficient to satisfy the personal involvement requirement standard of <u>Rode</u>. Accordingly, Defendants Giroux and Nicholas are entitled to entry of dismissal.

### D.   **Claims against Defendants Moore, Boyle, Welsh and Harding.**

Plaintiff alleges that Defendants Moore and Boyle violated her Eighth Amendment rights regarding the conditions of her confinement because they failed to use reasonable care to avoid a foreseeable risk when they exposed her to serious harm by placing her in unsafe living conditions. (<u>See</u> (Doc. 34 at 4). Plaintiff similarly alleges that Defendants Welsh and Harding violated her Eighth Amendment rights regarding the conditions of her confinement because they failed to exercise reasonable care in the safety and maintenance of her bunk. <u>Id</u>.

19

Pursuant to the Eighth Amendment, prisoners are protected from cruel and unusual punishment. Farmer v. Brennan, 511 U.S. 825, 834 (1994). Significantly, however, "not all deficiencies and inadequacies in prison conditions amount to a violation of an inmate's constitutional rights." Booth v. King, 228 F. App'x 167, 171 (3d Cir.2007). "Cruel and unusual punishment will only be found 'where viewing the totality of the conditions in the prison, the inmate's conditions of confinement, alone or in combination, deprive him of the minimal civilized measure of life's necessities'." Booth, 228 F. App'x at 171. The United States Supreme Court has made clear that liability under §1983 requires "more than ordinary lack of due care for the prisoner's interests or safety." Whitley v. Albers, 475 U.S. 312, 319 (1986).

An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer, 511 U.S. at 834; see also Beers–Capitol v. Whetzel, 256 F.3d 120, 125 (3d Cir. 2001). "In prison conditions cases, 'that state of mind is one of deliberate indifference to inmate health or safety'." Farmer, 511 U.S. at 834). "To establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must

be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference." Farmer, 511 U.S. at 837.

Here, Plaintiff's own exhibit demonstrates that Defendants were unaware of any unsafe conditions related to the bunk bed and deliberately disregarded any potential issues. (See Doc. 31 at 12, Facility Manager's Appeal Response). In fact, as soon as Defendants became aware of the problem, the bed was replaced. Thus, claims of negligence, without a more culpable state of mind, do not constitute "deliberate indifference." See Singletary v. Pennsylvania Dept. Of Corrections, 266 F.3d 186, 193 n. 2 (3d Cir. 2001).

Moreover, an accidental injury does not amount to an Eighth Amendment violation when prison officials act negligently or are unaware of a substantial risk of serious harm, which results in injury. See Hall v. Wagner, 2010 WL 4273326, at *4 (E.D. Pa. Oct. 29, 2010) (determining that the inmate, who claimed that he fell out of the top bunk because the frame broke, alleged "mere negligence or an accidental injury" and did not set forth a deliberate indifference or cruel and unusual punishment claim). At most, Plaintiff alleges mere negligence or an accidental injury. As such, prison officials are not

subject to liability as the result of negligent acts that cause unintended injury to inmates. Daniels v. Williams, 474 U.S. 327 (1986)(holding that inmate who was injured when he slipped on a pillow that was negligently left on the stairs by deputy sheriff does not state claim under §1983).

### E.     Equal Protection

To the extent that Duganne claims that Superintendent Giroux violated Plaintiff's Fourteenth Amendment "by denying the Plaintiff protection of her constitutional right to equal protection when she grieved medical doctor Famiglio and the official in charge of the prison allowed his now wife to answer the Plaintiff's grievance denying all claims against the medical doctor," (Doc. 34), her pleading is patently deficient. It is well-settled that a litigant, in order to establish a viable equal protection claim, must show an intentional or purposeful discrimination. Snowden v. Hughes, 321 U.S. 1, 8 (1944); Wilson v. Schillinger, 761 F.2d 921, 929 (3d Cir. 1985), cert. denied, 475 U.S. 1096 (1986); E & T Realty v. Strickland, 830 F.2d 1107, 1113-14 (11th Cir. 1987), cert. denied, 485 U.S. 961 (1988). This "state of mind" requirement applies equally to claims involving (1) discrimination on the basis of race, religion, gender, alienage or national origin, (2) the violation of fundamental rights and (3) classifications based on social or economic factors. See, e.g., Britton v.

22

City of Erie, 933 F. Supp. 1261, 1266 (W.D. Pa. 1995), aff'd, 100 F.3d 946 (3d Cir. 1996); Adams v. McAllister, 798 F. Supp. 242, 245 (M.D. Pa.), aff'd, 972 F.2d 1330 (3d Cir. 1992).

Duganne fails to allege facts from which it can be concluded that the Defendant Giroux engaged in intentional or purposeful discrimination or that she was treated differently from similarly situated individuals on the basis of her race or some other impermissible reason. Consequently, her equal protection claim will be dismissed.


## V.    Conclusion

For the reasons stated above, the motion to dismiss filed on behalf of Defendants, Dr. Famiglio and Corizon, Inc., for Plaintiff's failure to allege an Eighth Amendment deliberate indifference claim or HIPPA violation will be granted. The Corrections Defendants' motion to dismiss for Plaintiff's failure to allege an Eighth Amendment claim will also be granted. An appropriate order shall issue.


s/ *Malachy E. Mannion*
**MALACHY E. MANNION**
**United States District Judge**

Dated: **September 15, 2014**

O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2013 MEMORANDA\13-1359-01.wpd